# IN THE COURT OF APPEALS OF IOWA

No. 17-1201
Filed September 27, 2017

**IN THE INTEREST OF E.P.,**
**Minor Child,**

**R.P., Father,**
    Appellant,

**A.P., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A father and mother appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel of the Public Defender's Office, Council Bluffs, for appellant father.

Phil R. Caniglia, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Marti D. Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother and a father separately appeal the termination of their parental rights, which the juvenile court concluded was proper pursuant to Iowa Code section 232.116(1)(e), (f), (i), and (*l*) (2017). Because we find there are grounds for termination under section 232.116(1)(f), we affirm.[1]

We review termination of parental rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

At the time of the termination trial on June 27, 2017, the child was seven years old. The department of human services (DHS) became involved with the mother and child in 2015 on a voluntary basis due to the mother's illegal substance abuse. The father was not in Iowa and did not participate in services, except some supervised visits one month. Unfortunately, the mother was not forthcoming about her substance abuse and need for treatment, and she again tested positive for illegal substances.

The child was removed from the mother's custody in April 2016 due to the mother testing positive for methamphetamine. The child was placed with her maternal grandmother. The child was adjudicated a child in need of assistance (CINA) on May 25, 2016.

The mother's testimony at the termination trial explains what happened next:

---

[1] *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

A. I believe my supervised visits started in August of 2016. I believe I had semi-supervised visits prior to that, if memory serves me correctly.

Q. Why did they go from semi-supervised back to supervised? A. I had a positive drug test in August of 2016.

Q. Did you ever appear for an interaction with [the child] under the influence of methamphetamine? A. No, I did not.

Q. Never? A. No.

Q. With regard to your meth use, how often were you using? A. I would say three, maybe four times a week.

Q. For how long? A. It was on and off from sobriety. Then I would relapse. Sometimes it would be a few days. Sometimes it would be a few weeks that I would use. It wasn't, like I said, a consistent year or two years or anything like that.

Q. . . . But I recall seeing in one of the exhibits from your probation officer that you tested positive on May 11[, 2017]. A. Yes, that's correct.

. . . .

Q. So prior to May 11, how long had you been using during that period of time? A. I was using three or four times a week at that period of time.

Q. For how long? A. Maybe two months, two and a half.

Q. And during that period of two and a half months prior to May 11 of 2017, how often were you seeing [the child]? A. I was seeing her almost on a daily basis.

Q. So do you want to rethink your answer to me? If you're using meth three to four times a week and you are seeing [your child] almost on a daily basis, you were seeing her when you were under the influence of methamphetamine? A. It may have been in my system at the time of me seeing her, but I was not actively using prior to my meetings with my mom with her. I would use after I would leave my mother's house after [the child] would go to bed.

Q. You're currently in jail on a [ninety]-day contempt sentence; is that correct? A. That's correct.

Q. And you've been there a little over a month. There's discussion about drug court or, maybe, inpatient as well; is that correct? A. That's correct.

Q. So when you're in drug court, you can't have [your child] with you; right? A. I'm not aware of the rules of drug court. I have asked my criminal counsel to send me paperwork on the rules of all of that.

Q. How much longer do you think [the child] should wait for you to get sober and stay sober? A. I would like a chance to actually really try to maintain my sobriety for my daughter. I'm unsure on the amount of time. I don't foresee it being over a year. I don't foresee it being six months.

The father has either been in Colorado or Nebraska for extended periods of time, but eventually contacted DHS and participated in supervised visits with the child in March 2017. He has a history of mental-health and substance-abuse issues although he denies he has a chemical-dependency disorder. At the time of the termination trial, he was in jail and was facing charges of possession of a controlled substance, fugitive from justice—out-of-state, possession of a firearm with an altered identification tag, and possession of a concealed and loaded gun. The father also contends reasonable services were not provided to reunite him with the child, but he acknowledges various services were provided to the family, and he does not identify what type of services were not provided to him. His reliance on the mother to provide the child's care when she was a frequent user of methamphetamine gives cause to question the child's safety in his care.

Pursuant to section 232.116(1)(f), a court may terminate parental rights if a child is four years of age or older, has been adjudicated a CINA, has been out of a parent's custody for the last twelve consecutive months, and cannot at present be returned to the custody of the parent. There is clear and convincing evidence of all four factors here.

The mother contends on appeal that the child could be returned to her care within a reasonable time because she "has the ability to establish a home and sufficient income" to care for herself and the child. The father contends "the child could eventually be returned to his care." However, the statute provides that a court may terminate parental rights if after the statutory period—here, twelve months period—the child cannot be returned to the parent "at the present time." Iowa Code § 232.116(1)(f)(4). The child is older than four years of age,

has been adjudicated a CINA, and has been out of parental custody since April 2015. The mother has been involved with DHS and services for two years. She has only recently acknowledged her need to address her substance-abuse issues, and she was in jail at the time of the termination trial and did not have employment or housing. The father, too, was in jail and awaiting trial. It is clear that the child could not be returned to either parent at the present time.

"Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). The mother's recent acknowledgement of the need for sobriety and treatment is "simply too late." *See id.* (noting "changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient"); *see also In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) (noting the legislature has adopted "a limited time frame for parents to demonstrate their ability to be parents"); *In re K.G.*, No. 17-0347, 2017 WL 2189768, at *3 (Iowa Ct. App. May 17, 2017) (noting "a parent's last-minute rush to address longstanding— unaddressed concerns is insufficient to preclude the termination of parental rights"). Consequently, termination of each parent's parental rights under section 232.116(1)(f) is fully supported.

The mother asserts termination need not occur, in any event, relying upon section 232.116(3)(a) and (c). Section 232.116(3) sets out permissive factors the juvenile court can consider that might, under some circumstances, preclude termination. *See A.M.*, 843 N.W.2d at 113. Although section 232.116(3)(a) allows the juvenile court not to terminate when a "relative has legal custody of the

child," E.P. is not in the legal custody of her maternal grandparent—she is in the custody of the DHS. *See id.*

Section 232.116(3)(c) allows the juvenile court not to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge there is evidence of a clear bond between the mother and the child here. Yet, the child has been in the primary care of her grandmother for more than two years of life. The child is in need of long-term security and stability, which she has not been able to receive from her parents. *See* Iowa Code § 232.116(2) (requiring that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Termination is in the child's best interests.

Because a ground for termination exists, and no permissive factor precludes termination, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**